UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

RUBEN GIL,
Plaintiff,
v.
SANCHEZ, et al.,
Defendant.

Case No.: 17cv698-CAB-JMA

**ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER [Doc. No. 8]**

On April 5, 2017, Ruben Gil ("Plaintiff"), currently incarcerated at R.J. Donovan Correctional Facility ("RJD") located in San Diego, California, and proceeding *pro se*, filed a civil rights complaint ("Compl.") pursuant to 42 U.S.C. § 1983 (ECF No. 1). In the complaint, Plaintiff alleges that his Eighth Amendment rights have been violated because Defendants are sending him cellmates who are associates of "Security threat Groups," thus putting Plaintiff's life at "serious risk." (ECF No. 1 at 3.) On June 29, 2017, Plaintiff filed a motion for a preliminary injunction requiring all "defendants to cease their abnormal behavior." (ECF No. 8 at 3.) Plaintiff further alleges:

> This is becoming an unsafe and continuing violation, where I can get harm. I keep receiving cellies who are Security threat Groups associates. [T]his is the fifth cellie I received from R&R who are recruits and associates of the Security threat Groups. I am being tormented by this [*sic*] individuals every single day, and expose [*sic*] to get harm. [Doc. No. 8 at 3.]

While Defendants have not yet responded to the complaint, on June 29, 2017, at the Court's request, Defendants filed a response to the motion for preliminary injunction. [Doc. No. 11.] For the reasons set forth below, Plaintiff's motion for a preliminary injunction and temporary restraining order is DENIED.

## FACTUAL BACKGROUND

Plaintiff filed a request for a preliminary injunction seeking "prospective injunctive relief" so that Defendants would "cease their abnormal behavior" of assigning him cellmates who are "recruits and associates" of unspecified "security threat groups" because he feels "unsafe." (ECF 8 at 3.) Plaintiff claims that he has had five such cellmates, that he has been tormented by these cellmates every single day, exposed to harm, and could be irreparably injured. (*Id*.) Plaintiff seeks an injunction preventing him from being housed with inmates who are recruits or associates of any and all security threat groups (*id*.), and that the Court appoint "a monitor with authority to observe Defendants['] conduct and thereby permit the federal Court to oversee compliance with its continuing order" (*id*. at 7). Finally, Plaintiff states that he was attacked recently "at other institutions." (*Id*. at 6.) But he does not allege that he was attacked at RJD.

Upon arrival at an institution, an inmate is screened by a trained custody supervisor for an appropriate housing assignment. Cal. Code Regs. tit. 15, § 3269(a). The custody supervisor involved in the review and approval of an inmate's housing assignment must evaluate all factors to be considered when completing the initial housing review, including, but not limited to, the inmate's personal factors, length of sentence, enemies and victimization history, criminal influence demonstrated over other inmates, previous housing status, reasons for prior segregation, history of all in-cell assaults and/or violence, security-threat-group affiliation, involvement in race-based incidents, nature of commitment offense, history with prior cellmates, and Rules Violation Reports relating to being found guilty of physical or sexual abuse, sodomy, or other acts of force against a cellmate. *Id*.

In response to Plaintiff's motion, Defendants have submitted the declaration of D. Williams, a lieutenant at the facility where Plaintiff has been housed since his arrival at the prison. [Doc. No. 11-1.] In the declaration, D. Williams provides the following information:

> Security threat groups involve different inmate classifications related to gangs. (Williams Decl. ¶ 3.)
>
> It is very common for inmates to seek single-cell housing placement so that they do not have to share a cell with another inmate. (*Id*. ¶ 4.) Inmates are expected to double cell. (*Id*. ¶ 5.) Thus, RJD cannot accommodate inmates' requests to be single celled unless they meet certain very strict criteria, which is decided by a committee action after evaluating various factors. (*Id*.)
>
> Under California Code of Regulations title 15, § 3269, inmates are required to accept housing assignments as directed by staff, are expected to double cell, and are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice.
>
> While housed at a prior prison, Plaintiff was deemed to be an inmate who needed to be housed on a sensitive-needs yard, rather than a general-population yard. (*Id.* ¶ 7.) Sensitive-needs-yard placement is for inmates who have concerns with programing on a general population yard. (*Id*. ¶ 8.) Sensitive-needs-yard inmates participate together in large groups for such activities as yard, chow, medical appointments, and pill line. (*Id*. ¶ 9.) There is constant interaction among inmates on a sensitive needs yard facility. (*Id*.) Thus, a sensitive-needs-yard inmate cannot reasonably claim that he cannot safely be *placed in a cell* with any sensitive-needs-yard inmate, but that he can safely *be on the same facility* with such inmates. (*Id*.) This indicates that the inmate's goal is to obtain a single cell, rather than any realistic safety concerns. (*Id*.)
>
> While housed at Kern Valley State Prison, Plaintiff was allegedly the victim of an assault by a cellmate on or about September 30, 2016. (*Id*. ¶ 10.) As a result, Plaintiff was placed in administrative segregation and subsequently transferred out of that prison on October 12, 2016, due to self-expressed safety concerns. (*Id*.)
>
> When Plaintiff arrived at RJD on October 13, 2016, a trained custody supervisor reviewed the factors for housing placement for Plaintiff and assigned him to Facility B, which is a sensitive needs yard. (*Id*. ¶ 11.) Considering that Plaintiff is in close contact with inmates on Facility B during yard, chow, and medical appointments or pill line (if applicable), it is not reasonable for him to claim that he is only in danger when he is in a cell

with another inmate. (*Id*.) It appears that by claiming he cannot cell with any security-threat-group inmate, Plaintiff is trying to eliminate possible cellmates so that he will effectively be single-celled. (*Id*.) If the Courts were to grant Plaintiff's request then this would set a precedent for many inmates to claim they need to be single-celled, and the prison could not function. (*Id*.)

Plaintiff's documented enemies were taken into account in his housing placement. (*Id*. ¶ 12.) Plaintiff has not been housed in the same cell, or on the same facility with any documented enemy. (*Id*.) The prison has a system in place to flag enemies, so that enemies are not placed on the same facility. (*Id*.) Enemies can be within the same institution, but they are always housed on separate facilities. (*Id*.) Prison facilities are separated by guarded fences, with inmates not allowed to be on other facilities. (*Id*.)

Plaintiff's current cellmate does not have security-threat-group status. (*Id*. ¶ 13.) Additionally, none of his prior cellmates at RDJ have had security-threat-group status. (*Id*.)

Lt. Williams is not aware of any reasonable threat to Plaintiff from his current assigned cellmate at RJD. (*Id*. ¶ 14.)

## DISCUSSION

### A. Legal Standard.

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983); *Lathrop v. Unidentified, Wrecked & Abandoned Vessel*, 817 F. Supp. 953, 961 (M.D. Fl. 1993); *Kandlbinder v. Reagan*, 713 F. Supp. 337, 339 (W.D. Mo. 1989); *Suster v. Marshall*, 952 F. Supp. 693, 701 (N.D. Ohio 1996); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2) an

injunction binds only “the parties to the action,” their “officers, agents, servants, employees, and attorneys,” and “other persons who are in active concert or participation.” Fed. R. Civ. P. 65(d)(2)(A)-(C).

Substantively, “‘[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.” *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2736-37 (2015) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). “Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.” *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Finally, the Prison Litigation Reform Act (“PLRA”) further requires prisoners to satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

Section 3626(a)(2) places significant limits upon a court’s power to grant preliminary injunctive relief to inmates, and “operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum.” *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).

/ / / / /

/ / / / /

B. Analysis.

First, Defendants have now been served with the complaint. (ECF Doc. Nos. 9 and 10.) Therefore, the Court has personal jurisdiction over the Defendants at this time. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28.

However, even though the Court has personal jurisdiction over the entities or persons Plaintiff seeks to enjoin, Plaintiff has failed to establish a likelihood of success or imminent irreparable harm required to support a preliminary injunction. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131. "The fact that plaintiff has met the pleading requirements allowing him to proceed with the complaint does not, ipso facto, entitle him to a preliminary injunction." *Claiborne v. Blauser*, No. CIV S-10-2427 LKK, 2011 WL 3875892, at *8 (E.D. Cal. Aug. 31, 2011), *report and recommendation adopted*, No. CIV S-10-2427 LKK, 2011 WL 4765000 (E.D. Cal. Sept. 29, 2011).

Here, Plaintiff has failed to show a likelihood of success. In his underlying lawsuit, Plaintiff claims that his cellmate is in an unspecified "security threat group," and thus, he is in danger. (ECF 1 at 3-8.) In his moving papers, Plaintiff does not specify which gang his cellmate is associated with, or how that specifically creates a threat to him. (*Id*.) RDJ has placed Plaintiff on a sensitive needs yard, which is for inmates who are no longer involved with gang activity. (Williams Decl. ¶ 8.) Also, Plaintiff's housing facility is free of any of his documented enemies. (*Id*. ¶ 12.) Additionally, none of Plaintiff's cellmates to date at RJD, including his current cellmate, have security-threat-group status. (*Id*. ¶ 13.) Therefore, Plaintiff has failed to show a likelihood of success.

In addition, Plaintiff has failed to show irreparable harm. To meet the "irreparable harm" requirement, Plaintiff must do more than simply *allege* imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. Fed. R. Civ. P. 65(b). Mere "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary

injunction." *Caribbean Marine*, 844 F.2d at 674-75. Irreparable harm has been described as "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *See* 11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 (3d ed.). Indeed, where a plaintiff fails to demonstrate a likelihood of irreparable harm without preliminary relief, the court need not address the remaining elements of the preliminary injunction standard. *See Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

Here, Plaintiff does not state that he has actually been attacked or harmed at RJD (his current prison); rather he states that he was "attacked recently at the other Institution by the Security threat Groups." (ECF 8 at 6.) Moreover, Plaintiff does not explain why he is safe in his yard, where he is in close contact with many fellow yard inmates, yet he is somehow in danger in his cell. Finally, Plaintiff speculates that he might be in danger, not that he actually is in danger: "[t]his could be irreparable injury for my well-being . . . . " (ECF 8 at 3.) Therefore, Plaintiff has failed to show irreparable harm.

Accordingly, the Court finds Plaintiff has failed to establish either a likelihood of success on the merits of his Eighth Amendment claims at this stage of the proceedings, *or* the immediate or irreparable harm required to justify extraordinary injunctive relief. *Lyons*, 461 U.S. at 102; *see also Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) ("The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it.").

CONCLUSION

For the reasons set forth above, Plaintiff's motion for preliminary injunction and temporary restraining order [Doc. No. 8] is **DENIED.**

**IT IS SO ORDERED.**

Dated: July 6, 2017

Hon. Cathy Ann Bencivengo
United States District Judge