UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GIL,<br><br>                   Plaintiff,<br>v.<br>SANCHEZ, et al.,<br>                   Defendants. | Case No.: 17CV698-CAB(JMA)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. NO. 65] & DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION [DOC. NO. 104]** |

Plaintiff Ruben Gil (alternatively referred to herein as "Plaintiff" and "Gil") is a prisoner who was incarcerated and housed at R.J. Donovan Correctional Facility (referred to herein as "Donovan") when he initiated this lawsuit pursuant to 42 U.S.C. 1983.[1] Currently pending before the Court is a motion for summary judgment filed by Defendants Captain Sanchez (now Searles and referred

---

[1] Gil is no longer housed at Donovan. He was transferred to Corcoran State Prison on November 7, 2017 [Doc. No. 39], and has since been placed in the Male Community Re-entry Program in Los Angeles [Doc Nos. 112 & 113].

1

herein as "Sanchez") and Lieutenant Williams (referred to herein as "Williams." Sanchez and Williams are also jointly referred to herein as "Defendants"). [Doc. No. 65.] Plaintiff has also filed a motion for temporary restraining order and preliminary injunction. [Doc. No. 104.] [2]

## I. **Procedural History**

This case was initiated on April 4, 2017, with the filing of Gil's Complaint, which survived the Court's initial *sua sponte* screening process and was forwarded to the U.S. Marshall's Service for service on Defendants. [Doc. No. 1 & 3.] After Defendants filed their Answer, the Court conducted an Early Neutral Evaluation Conference and Case Management Conference on September 13, 2017, after which the parties were permitted the opportunity to conduct discovery, which was ordered to be completed by March 16, 2018. [Doc. No. 28.]

On March 30, 2018, Defendants filed a motion for summary judgment in which they contend they are entitled to judgment as a matter of law because Gil did not exhaust his administrative remedies prior to filing this action. [Doc. No. 65.] Defendants also seek summary judgment on the basis they were not deliberately indifferent to Gil's safety and are entitled to qualified immunity. [*Id.*] Thereafter, the Court issued an order informing Gil that Defendants' motion for summary judgment under Fed. R. Civ. P. 56 would, if granted, end his case, and advising him of Rule 56's requirements for opposing such a motion. [Doc. No. 66; see also *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).] The Court also ordered any opposition brief, including supporting exhibits, be filed and served by Monday, April 30, 2018. [Doc. No. 66.] Although the Court ordered Gil to make a single filing, he has since been permitted to make four separate filings in opposition to

---

[2] On September 12, 2018, Plaintiff filed a Motion to Enforce the Rule of the Magistrate Judge Notice and Recommendations and Pending Motions [Doc. No. 118], wherein he requests that the court rule on the pending motion for summary judgment. That motion [Doc. No. 118] is **DENIED AS MOOT**.

Defendants' motion for summary judgment. [Doc. Nos. 72, 75, 89 & 91.] Defendants filed a reply brief, in response to Gil's first opposition brief. [Doc. No. 73.] Gil has also filed a motion for temporary restraining order and preliminary injunction. [Doc. No. 104.] After reviewing the aforementioned filings, and as set forth below, the undersigned hereby GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for temporary restraining order and preliminary injunction.

## II. Plaintiff's Factual & Legal Claims

Plaintiff is proceeding pro se and, therefore, the Court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). Gil alleges when he was transferred to Donovan he informed Sanchez and Williams that he had experienced assaults by "Security Threat Groups" since 2013, including a recent assault in his cell at the "other institution." [Doc. No. 1, p. 3 of 8.] He alleges that despite knowing Gil is at ongoing risk of harm by members of the security-threat-groups, Sanchez assigned him "cellies" that are members of these groups, creating serious risk to Plaintiff's life. [*Id.*] Gil states that he was harassed by inmates every day while he was at Donovan and was "in pain" as a result of the harassment, which he likens to physical torture. [Id.] Williams is alleged to be aware of, but indifferent to, Gil's situation. [*Id.*, p. 2 of 8.] Gil alleges his 8th Amendment right to be free from cruel and unusual punishment was violated by Sanchez and Williams' actions. [*Id.*, p. 3 of 8.]

## III. Legal Standard for Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal

Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy
/ /
and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id*. at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party has carried its burden under Rule 56(c), the burden shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The nonmoving party may not rely on allegations in the complaint, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (emphasis in original) (internal citation omitted). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "An issue of material fact is genuine 'if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.'" *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quoting *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)). If

the nonmoving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 325.

When considering a motion for summary judgment, it is not the Court's function "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 588.

Each party's position as to whether a fact is disputed or undisputed must be supported by: (1) citation to particular parts of materials in the record, including but not limited to depositions, documents, electronically stored information, affidavits or declarations, stipulations or discovery; or (2) a showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("[R]equiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair."). If a party supports its motion by declaration, the declaration must set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).

Ordinary pro se litigants, like other litigants, must comply strictly with the summary judgment rules. *Thomas*, 611 F.3d at 1150. Pro se inmates are, however, expressly exempted from strict compliance with the summary judgment rules. *Id.* Courts should "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Id.* In

5
17CV698-CAB(JMA)

addition, the Court may consider as evidence all contentions "offered [by a plaintiff] in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). This approach "exempts pro se inmates from strict compliance with the summary judgment rules, but it does not exempt them from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (citing *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (emphasis in original)).

### IV. Discussion

Defendants seek summary judgment on the basis Gil did not exhaust his administrative remedies prior to filing this action and, alternatively, undisputed facts show they were not deliberately indifferent to Gil's safety and are entitled to qualified immunity. [Doc. No. 65.] Gil opposes the motion for summary judgment and requests the Court enjoin "[D]efendants and (CDCR defendants), their successors in office, agents and employees and all other persons acting in concert and participation with them from taking reprisals against Plaintiff during all this years until this moment." [Doc. No. 104, p. 2.]

#### A. Exhaustion

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Proper exhaustion demands compliance with an agency's deadlines and

other critical procedural rules[.]" *Woodford v. Ngo,* 548 U.S. 81, 90 (2006). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'[ ]-rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); see also *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting *Jones*, 549 U.S. at 218). The Ninth Circuit has consistently held, however, "that the PLRA requires only that a prisoner exhaust available remedies, and that a failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir. 2010); *Sapp v. Kimbrell*, 623 F.3d 813 823 (9th Cir. 2010); *Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014) (en banc), cert. denied sub nom. *Scott v. Albino*, 135 S. Ct. 403 (2014)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at 1171 (quoting *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)).

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1166. When defendants seek summary judgment based on a plaintiff's failure to exhaust, they "must first prove that there was an available administrative remedy and that [plaintiff] did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If they do, the burden of production then shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; see also *McBride*, 807 F.3d at

984 (citing "certain limited circumstances where the intervening actions or conduct by prison officials [may] render the inmate grievance procedure unavailable.")."If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied." *Id*.

      The California prison system provides an administrative remedy for prisoners who wish to appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." Cal. Code Regs., tit. 15 § 3084.1(a). Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations requires three formal levels of appeal review. Thus, in order to properly exhaust, a California prisoner must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," Cal. Code Regs., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." Id. § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a). If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days . . . upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2). "The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of

the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated." *Id.* § 3084.1(b); see also CDCR Op. Man.. § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

Section 3084.8 further provides that the CDCR's "[t]ime limits for reviewing appeals shall commence upon the date of receipt of the appeal form by the appeals coordinator." § 3084.8(a). With some exceptions, "[a]ll appeals shall be responded to and returned to the inmate or parolee by staff," *id.* § 3084.8(c), and first and second level responses are due "within 30 working days from date of receipt by the appeals coordinator." *Id.* § 3084.8(c)(1), (2). Third level responses are due "within 60 working days from the date of receipt by the third level Appeals Chief." *Id.* § 3084.8(c) (3). "'Working day' means a calendar day excluding Saturdays, Sundays, and official state holidays." Cal. Code Regs., tit. 15 § 4003(j)(2). "Except for the third level, if an exceptional delay prevents completion of the review within specified time limits, the appellant, within the time limits provided in subsection 3084.8(c), shall be provided an explanation of the reasons for the delay and the estimated completion date." § 3084.9(e).

Gil initiated his administrative grievance against Sanchez and Williams on January 4, 2017, alleging they celled him with inmates that were designated as having security-threat-group status. [Doc. No. 65-6, *Decl. of V. Sosa*, ¶ 9, Ex. 2; Doc. No. 65-7, Ex. 1, *Dep. of Gil*, pp. 91:19 - 92:5.] Thereafter, Gil filed his lawsuit against Sanchez and Williams on April 5, 2017. [Doc. No. 1.] By that time his grievance had been denied at the second level and was pending at the third level. [*Id.*, p. 6; Doc. No. 65-6, *Decl. of V. Sosa*, ¶ 9, Ex. 2, p. 4.] He completed the third level of review of his administrative claim about three months later, on

July 12, 2017. [Doc. No. 65-6, *Decl. of V. Sosa*, ¶ 9, Ex. 3; Doc. No. 65-7, Ex. 1, *Dep. of Gil*, pp. 91:1-25.]

Gil concedes he did not exhaust his administrative grievance until after this lawsuit was filed, but argues his grievance was sufficiently exhausted because it was in the third and final level of review when he filed his Complaint. [Doc. No. 72, *Pl.'s Decl. in Resp. to Defs.' Mot. for Summ. J.,* p. 8: 14-16.] Ninth Circuit case law is clear, however, that "a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012), quoting *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). A prisoner must wait to file suit until the exhaustion requirement is met, and may not exhaust while the federal action is pending. *McKinney*, 311 F.3d at 1200-01. In cases such as this, where the plaintiff initiates his lawsuit prior to exhausting but continues to pursue his administrative claim while the litigation is pending, courts have held the federal action should be dismissed without prejudice to filing a new lawsuit once the exhaustion requirement has been met. *Id*. Here, however, Gil has now completed the third level of review of his administrative claim, the parties have completed discovery, and the record is sufficiently developed to permit the court to consider whether summary judgment is appropriate as to the merits of Plaintiff's claims.[3]

---

[3] Gil argues summary judgment should be denied because he has not taken the depositions of Defendants or that of other CDCR staff members from other institutions, and because the Court has not directed Defendants to respond to requests for admissions, requests for production of documents, or interrogatories. [Doc. No. 72, *Pl.'s Decl. in Resp. to Defs.' Mot. for Summ. J.,* pp. 3:15-4:9, 7:18-26, 8:5-12.] Gil also claims he cannot oppose summary judgment because Defendants have not provided the names of prison officials at other institutions. [*Id.* at 4:9-11.]

Gil offers no explanation as to why he did not take Defendants' depositions, who during the discovery phase of this case affirmatively represented they would appear for deposition if noticed [see Doc. No. 58, p. 2.], or the depositions of the other individuals. As for Gil's claims regarding Defendants' discovery responses and not providing him with the names of prison officials at other institutions, these issues were previously raised with the Court in a motion to

17CV698-CAB(JMA)

1 The Court, therefore, turns its focus to the parties' arguments regarding whether
2 Gil has established Defendants acted with deliberate indifference and whether
3 they are entitled to qualified immunity. See *Wells v. Jerome Cnty Jail*, 2016 WL
4 1755605 (D. Idaho, May 2, 2016.) (granting summary judgment in favor of
5 defendants as to merits of plaintiff's equal protection claim after determining
6 plaintiff had failed to exhaust.)

### B. Deliberate Indifference

Prison officials have a duty under the Eighth Amendment to avoid excessive risks to inmate safety. See, e.g., *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a claim under the Eighth Amendment, Plaintiff must allege Defendants were "deliberate[ly] indifferen[t]" to "conditions posing a substantial risk of serious harm." *Id.* Deliberate indifference is more than mere negligence, but less than purpose or knowledge. See *id.* at 836. A prison official acts with deliberate indifference only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In this matter, as stated above, Gil is proceeding pro se and, therefore, the Court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

Gil alleges when he was transferred to Donovan he informed Sanchez and

---

compel that Gil filed on December 18, 2017. [Doc. No. 43.] The Court determined at that time that Gil had not demonstrated a basis to compel Defendants to produce further discovery responses. [Doc. No. 67.] Furthermore, the Court finds that pursuant to Fed. R. Civ. P. 56(d), Plaintiff has not shown this discovery is essential to his opposition to Defendant's motion for summary judgment.

Williams that he had experienced assaults since 2013 by members of security-threat-groups, including a recent assault in his cell at the "other institution." [Doc. No. 1, p. 3; Doc. No. 72, *Pl.'s Decl. in Resp. to Defs.' Mot. for Summ. J.*, pp. 5:22-6:7, Ex. A (p. 13).] He alleges that despite knowing Gil is at ongoing risk of harm by members of the security-threat-groups, Sanchez assigned him "cellies" that are members of these groups, creating serious risk to Plaintiff's life. [Doc. No. 1, p. 3.] Gil states that he was harassed by inmates every day while he was at Donovan and was "in pain" as a result of the harassment, which he likens to physical torture. [*Id.*] Williams is alleged to be aware of, but indifferent to, Gil's situation.[4] [*Id.*, p. 2 of 8.]

In his opposition, Gil claims he was harassed by inmate Marvin Johnson, who he alleges made threats after Gil was assigned to cell with him because Johnson "didn't want to live with a rat." [Doc. No. 72, *Pl.'s Decl. in Resp. to Defs.' Mot. for Summ. J.*, p. 6:8-12, Ex. A (pp. 18 & 19).] The Inmate Request form he

---

[4] Throughout his briefs, Gil makes the argument that his case should survive summary judgment due to incidents that occurred at institutions other than Donovan and conduct by individuals who are not defendants in this case. For example, Gil argues summary judgment should be denied because he was assaulted at Corcoran, High Desert State Prison, and Kern Valley State Prison. [Doc. No. 72, *Pl.'s Decl. in Resp. to Defs.' Mot. for Summ. J.*, pp. 4:26-5:20.] He makes reference to being the subject of a "pattern of assaults in short periods of time as well as moving Plaintiff in short periods of time from cell to cell" and to being recently assaulted by a correctional officer. [*Id.* p. 2:10-14; 3:12-14; 4:12-19.] He also submits declarations by inmates that have witnessed this treatment. In these declarations, inmate Reyeros describes harassment Gil received from staff members at Corcoran after his transfer there from Donovan. [*Id.* pp. 104-106.] Inmate Hatfield, who celled with Gil at Donovan, describes witnessing officers there deny Gil food, open and close his cell door without reason, and subject him to poor cell conditions such as a lack of electricity. [*Id.* pp.99-101.] Hatfield does not attribute any of this conduct to either Sanchez or Williams and instead identifies Counselor Blanding, who is not a party to this lawsuit. Gil's Complaint, however, only seeks recourse against Sanchez and Williams for the 8th Amendment violation they are alleged to have committed due to Gil's cell assignments at Donovan. Evidence of harassing behavior committed at other institutions, or of conduct that is not alleged to have been perpetrated or otherwise facilitated by the named Defendants as a result of their alleged indifference to Gil's cell-mate assignments, is not relevant to the claims asserted in Plaintiff's Complaint and, therefore, does not raise a disputed issue of material fact so as to defeat summary judgment.

submits in corroboration contradicts this account. That form indicates Gil complained Johnson made noises and gave him a hard time at night, but Gil denied he had been threatened. [*Id.*, p. 19.] Gil was informed convenience bed moves were made on Sundays, given a bed request form, and advised to find someone with whom he was compatible. [*Id.*]

During his deposition Gil identified five other inmates, each of whom was assigned as a cellmate with Gil for some period of time during his stay at Donovan, each of whom he contends committed the harassing behavior that is the subject of his Complaint. [Doc. No. 65-7, Ex. 1, *Dep. of Gil*, p. 44: 11-14.] These inmates are Monroy, Estrada, Escobedo, Westine and Earle Eric. Gil contends each of these individuals demanded he provide them with food. [*Id.*, p. 59:13-18.] Gil also alleges Estrada and Monroy were harassing because they had tattoos that Gil believes evidence security-threat-group status.[5] [*Id.*, p. 39:6-18.] In his opposition, Gil argues that because Sanchez was familiar with prison policies, she should have checked Estrada's tattoos when Gil made a complaint to Institutional Security Unit (ISU) staff about him. [Doc. No. 72, *Pl.'s Decl. in Resp. to Defs.' Mot. for Summ. J.*, p. 2:16-3:8, Ex. A, p. 15.]

Gil claims he was issued a Rules Violation Report ("RVR") for trying to address a cell move and, thereafter, was housed with Westine.[6] [*Id.*, p. 6:13-25, Ex. B (p. 36) & Ex. C (p. 41).] Gil claims Westine harassed him by demanding Gil

---

[5] Gil submits a declaration by inmate Elizalde in which Elizalde states Gil was moved from cell 129 to cell 239 and then from there to cell 227 with inmate Monroy. [Doc. No. 72, *Pl.'s Decl. in Resp. to Defs.' Mot. for Summ. J.*, p. 103.] Elizade does not report that he witnessed any harassing behavior by Monroy or connect either Sanchez or Williams to Gil's cell transfers.

[6] The RVR shows Gil was written up for calling an officer a "dumbass" for signing Gil's form on the wrong line, causing Gil to have to rewrite the form. [Doc. No. 72, *Pl.'s Decl. in Resp. to Defs.' Mot. for Summ. J.*, Ex. C (p.41).] Afterwards Gil was given another form and ordered to report back to his cell at which point he responded with "come on use force on me, I want you guys to touch me so I can sue all of you." [*Id.*]

give him a prison form called a 128-G (which documented Gil's background), and threatening to cause problems for Gil in their shared cell if Gil did not comply. [Doc. No. 65-7, Ex. 1, *Dep. of Gil*, pp. 40:4-41:4.] Gil never gave Westine his 128-G because correctional officers transferred him out of the cell after he complained. [*Id.*, p. 41:6-14.]

Gil claims Escobedo harassed him by demanding Gil give him food under the threat that something would happen if he did not. [*Id.*, pp. 41:15-42:2.] When Gil complained about inmate Escobedo's threat to correctional officers he was transferred to another cell a week or so later. [*Id.*, p. 42:5-23.]

Gil claims when was assigned to a cell with Eric, Eric demanded Gil immediately get out of being his cellmate, and threatened him with assault if he refused. [*Id.*, p. 44:8-23.] The mental health committee at Donovan enhanced Gil's level of care in the prison's mental health delivery system in order to have him removed from that cell. [*Id.*, pp. 44:16-48:5.] Gil testified that when he complained to correctional staff about cellmates Monroy, Estrada, Escobedo, Westine, and Eric's threats, the correctional staff moved Gil to a different building. [*Id.*, pp. 56:1-60:20.]

***Gil Has Not Met the Requirements for a Deliberate Indifference Claim.***

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," *Farmer*, 511 U.S. at 834, quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984). "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 834, quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558

(1st Cir. 1988); see also *Wilson v. Seiter*, 501 U.S., at 303, 111 S.Ct., at 2326–2327 (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment).

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an inmate's serious health or safety need. *Wilson*, 501 U.S. at 302; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official may only be held liable for deliberate indifference when two requirements are met: First, a plaintiff must allege an objectively "sufficiently serious" deprivation. *Farmer*, 511 U.S. at 834. Under the objective requirement, a prison official's acts or omissions must be "sufficiently serious" - i.e. the actions must deprive an inmate of the "minimal civilized measure of life's necessities." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "To the extent [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes,* 452 U.S. at 347. "[E]xtreme deprivations are required" to rise to the level of a constitutional violation. *Hudson v. McMillian,* 503 U.S. 1, 8-9 (1992).

Second, the prison official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

Here, there is no evidence to indicate either Sanchez or Williams took action to deprive Gil of the minimal civilized measure of life's necessities. First,

Gil's allegation that Sanchez and Williams housed him with members of security-threat-groups is not supported by the evidence. The undisputed facts show neither Sanchez nor Williams were involved in Plaintiff's housing decisions while he was at Donovan. [Doc. No. 65-4, *Decl. of S. (Sanchez)*, ¶ 6; Doc. No. 65.5, *Decl. of D. Williams*, ¶ 4.] CDCR records indicate that pursuant to CDCR regulations, when Gil arrived at Donovan a trained custody supervisor completed an initial housing review and assigned Gil to Facility B, which is a sensitive needs yard.[7] [8] [Doc. No. 65-4, *Decl. of S. (Sanchez)*, ¶ 3.]

Even if Sanchez or Williams had been involved in decisions regarding Gil's housing placement, Gil has not shown a "sufficiently serious" deprivation of a minimal civilized measure of life's necessities. He was never assaulted at Donovan. [Doc. No. 65-7, Ex. 1, *Dep. of Gil*, p. 38: 19-22.] Nor was he celled with any documented enemies or with any inmates that were then classified as having security-threat-group status. [Doc. No. 65-4, *Decl. of S. (Sanchez)*, ¶ 5.] Furthermore, the harassment Gil alleges he received from other inmates was not extreme. Demands for food, a cell transfer, or Gil's 128-G form did not deprive Gil of a "minimal civilized measure of life's necessities" and there is no showing

---

[7] CDCR regulations require that an inmate be screened by a trained custody supervisor for an appropriate housing assignment upon arrival at an institution. Cal. Code Regs. tit. 15, § 3269(a). This custody supervisor must evaluate all factors to be considered when completing the initial housing review, including, but not limited to, the inmate's personal factors, length of sentence, enemies and victimization history, criminal influence demonstrated over other inmates, previous housing status, reasons for prior segregation, history of all in-cell assaults and/or violence, security-threat-group affiliation, involvement in race-based incidents, nature of commitment offense, history with prior cellmates, and rules violations for physical or sexual abuse, sodomy, or other acts of force against a cellmate. *Id.*

[8] Sensitive-needs-yard inmates participate together in large groups for such activities as yard, chow, medical appointments, and pill line, and there is constant interaction among inmates on a sensitive needs yard. [Doc. No. 65-4, *Decl. of S. (Sanchez)*, ¶ 4; Doc. No. 65.5, *Decl. of D. Williams*, ¶ 3.] Inmates assigned to a sensitive needs yard must be able to interact with all other sensitive needs inmates regardless of race or affiliations. *Id.*

that Gil was harmed simply by being assigned to share a cell with an individual that has tattoos. see *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) ("mere threat" of possible harm does not violate the Eighth Amendment); *Berg v. Kincheloe*, 749 F.2d 457, 459 (9th Cir. 1986) (deliberate indifference requires showing of "more than a mere suspicion that an attack will occur."); *Hernandez v. Schriro*, No. CV 05-2853-PHX-DGC, 2011 WL 2910710, at *6 (D. Ariz. July 20, 2011) ("While theoretical risk is always possible, *Farmer* requires more— 'conditions posing a substantial risk of serious harm.'"). Moreover, when Gil complained about each of these inmates, prison staff took steps to remove him from the housing situation. [Doc. No. 65-7, Ex. 1, *Dep. of Gil*, p. 39:6-18; 40:4-42:23; 44:8-48:5; 56:1-60:20.] Thus, Gil's claims do not meet the objective component of an Eighth Amendment claim.

The undisputed facts also establish that neither Sanchez nor Williams had the requisite culpable state of mind to establish they were deliberately indifferent to Gil's housing situation. In addition to the fact that neither Sanchez nor Williams participated in any of the housing decisions for Gil while he was at Donovan, neither believed he was at a substantial risk of harm from his cellmate assignments or from harassment by other inmates at Donovan. [Doc. No. 65-4, *Decl. of S. (Sanchez)*, ¶¶ 6-8; Doc. No. 65.5, *Decl. of D. Williams*, ¶ 4-6.] Thus, neither Defendant had the requisite culpable state of mind to establish they were deliberately indifferent to Gil's housing situation.

**C. Qualified Immunity**

Qualified immunity entitles government officials to "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to strike a balance between the competing "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The driving force behind creation of the qualified immunity doctrine was a resolution to resolve unwarranted claims against government officials at the earliest possible stage of litigation. *Id.*

Courts conduct a two-prong analysis to determine whether a government official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). First, examining the alleged facts in favor of the plaintiff, the court must consider whether the alleged facts show the government official's actions violated the plaintiff's constitutional rights.[9] *Id.* at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*; accord *Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703, 711 (9th Cir. 2010). On the other hand, if a violation could be made out on a favorable view of the plaintiff's facts, then the court must next determine whether the constitutional right purportedly violated was clearly established in the specific context of the case at hand. *Saucier*, 533 U.S. at 201.

"A right is 'clearly established' when its contours are sufficiently defined, such that 'a reasonable official would understand that what he is doing violates that right.'" *Foster v. Runnels*, 554 F.3d 807, 815 (9th Cir. 2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). If the law does not "put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified

---

[9] Courts are not required to conduct the *Saucier* two-prong analysis in a particular sequence. *Pearson*, 555 U.S. at 236.

immunity is appropriate." *Saucier*, 533 U.S. at 202. If, however, a reasonable official would have known that the alleged conduct was in violation of a clearly established constitutional right, then immunity is forfeited. *Id*. "[T]he law may be clearly established even if there is no case directly on point. . . . It is enough if 'in the light of pre-existing law the unlawfulness is apparent.'" *Inouye v. Kemna*, 504 F.3d 705, 715 (9th Cir. 2007) (quoting *Wilson*, 526 U.S. at 615).

Gil's claims he was exposed to harm because of his cellmate assignments. As a sensitive-needs-yard inmate, however, he was cleared to be in close proximity to those same inmates on the yard and to be able to interact with other inmates regardless of race or affiliations. [Doc. No. 65-4, *Decl. of S. (Sanchez)*, ¶ 4; Doc. No. 65.5, *Decl. of D. Williams*, ¶ 3.] No reasonable prison official could believe that celling inmates together who were cleared to interact closely with each other would violate an inmate's constitutional rights. Thus, for this reason and as discussed above, the Court concludes neither Sanchez nor Williams violated Gil's constitutional rights and these Defendants are entitled to qualified immunity. See *Saucier*, 533 U.S. at 201.

### D. Motion for Temporary Restraining Order & Preliminary Injunction

Gil has filed a motion for temporary restraining order and preliminary injunction in which he requests the Court enjoin "[D]efendants and (CDCR defendants), their successors in office, agents and employees and all other persons acting in concert and participation with them from taking reprisals against Plaintiff during all this years until this moment." [Doc. No. 104, p. 2.] An injunction is "an order that is directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than a temporary fashion." *Gon v. First State Ins. Co.*, 871 F.2d 863, 865 (9th Cir. 1989.) Here, as articulated above, Gil is not entitled to relief for the claims asserted in his Complaint and, thus, is also not entitled to the injunctive relief his seeks.

## V. Conclusion

Based on the foregoing, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for temporary restraining order and preliminary injunction is DENIED. The case is dismissed in its entirety and with prejudice.

**IT IS SO ORDERED.**

Dated: September 21, 2018

Hon. Cathy Ann Bencivengo
United States District Judge